# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In the Matter of:

**Pyratech Security Systems, Inc.**                              Case #: 18-55926
                                                                  Chapter 11

        Debtor.                                                   Hon. Maria L. Oxholm

_____/

## DEBTOR'S COMBINED CHAPTER 11 PLAN AND DISCLOSURE STATEMENT

*THE DEBTOR INTENDS THAT THIS PLAN WILL PROVIDE ADEQUTE INFORMATION UNDER 11 U.S.C. § 1125(f)(1) IN LIEU OF A SEPARATE DISCLOSURE STATEMENT*

### I.      The Plan

Debtor Pyratech Security Systems, Inc. respectfully submits this plan pursuant to 11 U.S.C. 1121.

The format is based on the Court's Requirements for Information to include in the Combined Plan and Disclosure Statement.

### A.      Definitions

For the purpose of this Plan, the following terms shall have the meanings set out below unless the context clearly requires otherwise.  Terms that are not defined below shall have the meaning provided in the United States Bankruptcy Code.

A. 1 <u>Administrative Claim</u>: Any claim including but not limited to, a claim for compensation of a professional, made pursuant to §330 of the Code, U.S. Trustee fees, and claims entitled to administrative priority pursuant to §507(a)(1) of the Code.

A. 2 <u>Allowed Administrative Claim</u>: That portion of an Administrative Claim that has been allowed by a Final Order or has not been objected to within the time periods established by the Plan or a Final Order of the Court.

A. 3 <u>Allowed Claim</u>: Any claim for which a proof of claim has been filed prior to the Bar Date or which is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely filed; or any claim as to which an objection has been resolved by a Final Order of the Court establishing the priority and amount of such claim.

A. 4 <u>Allowed Secured Claim</u>: A Secured Claim that is an Allowed Claim.

A. 5 <u>Bar Date</u>: April 3, 2019

A. 6 <u>Case</u>: This Chapter 11 Bankruptcy case.

A. 7 <u>Chapter 11</u>: Chapter 11 of the Code.

A. 8 <u>Claim</u>: Claim shall have that meaning specified by §101(5) of the Code.

A. 9 <u>Closing Date</u>: That date, as soon as practicable after the Confirmation Date, at which time all documents, agreements, and instruments necessary for implementation of the Plan shall be executed, and in any event, no later than the Effective Date.

A. 10 <u>Code</u>: The United States Bankruptcy Code, Title 11 of the United States Code as enacted in 1978 and thereafter amended.

A. 11 <u>Confirmation Date</u>: The date on which the Confirmation Order is entered.

A. 12 <u>Confirmation Order</u>: means a Final Order entered by the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

A. 13 <u>Court</u>: The United States Bankruptcy Court for the Eastern District of Michigan, Southern Division.

A. 14 <u>Creditor</u>: Any person or entity having an Allowed Claim against Debtor or property of Debtor.

A. 15 <u>Debtor</u>: Pyratech Security Systems, Inc.

A. 16 <u>Effective Date</u>: Thirty days after the Confirmation Order becomes a Final Order.

A. 17 <u>Estate</u>: The estate created under §541 of the Code.

A. 18 <u>Exemption Claim</u>: Debtor may keep certain property as exempt under federal or state law.

A. 19 <u>Filing Date</u>: November 27, 2018

A. 20 <u>Group:</u> means Creditors who hold Claims in this Estate which are (i) not subject to being placed in a Class pursuant to Section 1123(a)(1) of the Bankruptcy Code, and (11) not entitled under Section 1126 of the Bankruptcy Code to vote to accept or reject the Plan.

A. 21 <u>Holder:</u> means a Person holding a Claim, Interest, or Lien, as applicable.

3

A. 22 <u>Impaired:</u> means, when used with reference to a Claim or Interest, that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

A. 23 <u>Insider:</u> shall have the meaning ascribed to such term in Section 101(31) of the Bankruptcy Code.

A. 24 <u>Interest:</u> means any equity interests in the Debtor, of any kind or nature, including without limitation, any corporate share interests held jointly with Debtor.

A.25 <u>Lien:</u> means a charge against, or an interest in property to secure payment of a debt or performance of an obligation.

A. 26 <u>Person:</u> shall have the meaning given to it under Section 101(41) of the Bankruptcy Code.

A. 27 <u>Petition Date:</u> November 27, 2018

A. 28 <u>Plan</u>: This Plan of Reorganization, including any modifications, amendments or corrections thereof.

A.29 <u>Rejection Claim</u>: An Allowed Claim arising from the rejection by the Debtor of a lease or executory contract.

A. 30 <u>Secured Claims:</u> Claims of creditors holding valid and non-voidable liens against assets of the Debtor. The holders of secured claims in this case are Wells Fargo Home Mortgage and First Merit Bank.

**B.**      **<u>Certain General Terms and Conditions</u>**

The following general terms and conditions apply to this Plan.

B. 1 <u>Claims</u>: Various types of claims are defined in this Plan. This Plan is intended to deal with all claims against the Debtor or property of the Debtor of whatever character, whether or not contingent or liquidated, or whether or not allowed by this Court pursuant to §502(a) of the Code. However, only those claims allowed pursuant to §502(a) of the Code will receive the treatment afforded by the Plan.

B. 2 <u>Time for Filing Claims</u>: All creditors other than creditors holding an Administrative Claim, or a Rejection Claim, including creditors having damage claims by reason of §1124(2)(c) of the Code, must have filed proofs of claim, if necessary, by the Bar Date. Rejection claims must be filed within thirty (30) days after the Confirmation Date. Any claim which must be filed by the Bar Date and which is not filed by such date shall be forever barred.

**C.     Treatment of Creditors and Interest Holders Not Subject to Classification or Otherwise Not Required to Vote For or Against the Plan.**

Administrative creditors and priority creditors shall be paid as follows:

C. 1. <u>Group 1 – Administrative Claims.</u> The claims of this Group 1 shall consist of all allowed administrative claims, including any taxes that qualify as administrative claims.

5

C. 1.1.    Claims included in this group shall retain their priority notwithstanding the confirmation of this plan, including but not limited to: (i) the occurrence of the Effective Date; (ii) the filing by the Reorganized Debtor of any subsequent proceeding under any chapter of the Bankruptcy Code.    The reorganized Debtor shall remain responsible for every Claim in this group.

C. 1.2. After payment in full of all claims entitled to higher priority in accordance with § 507 of the Bankruptcy Code, each claimant in this Group shall be paid the full amount of its Claim on such date as may be mutually agreed upon between Debtor or the Reorganized Debtor and the particular claimant, or, if no such date is agreed upon, the latest of (i) the Effective Date, (ii) the date by which payment would be due in the ordinary course of business between the Debtor and such Administrative Creditor, or (iii) the date upon which the Bankruptcy Court enters its Final Order, if necessary, allowing and approving the Debtor's payment of such Administrative Claim.

C. 1.3. The Bar Date for asserting any Administrative Claim, except for any Administrative Claim for Professional Fees against the Reorganized Debtor shall be thirty (30) days after the Effective Date.  Except as otherwise provided by order

6

of the Bankruptcy Court, any Administrative Claim except for any Administrative Claim for Professional Fees first asserted after this Bar Date will not be Allowed and shall not be entitled to payment as an Administrative Claim.

C. 1.4. Group 1 consists, without limitation, of Holders of Administrative Claims, if and when allowed. Holders of Administrative Claims may include, without limitation,; MAXWELL DUNN, PLC for professional fees in the estimated amount of $15,000.00.

C.2.    Group 2 – Priority Tax Claims.  The Claims of Group 2 shall consist of the Allowed Claims that are entitled to priority under § 507(a)(8) of the Bankruptcy Code.

C.2.1    Claims included in this group shall retain their priority notwithstanding the confirmation of this plan, including but not limited to: (i) the occurrence of the Effective Date; (ii) the filing by the Reorganized Debtor of any subsequent proceeding under any chapter of the Bankruptcy Code.  The reorganized Debtor shall remain responsible for every Claim in this group.

C.2.2  After payment in full of all claims entitled to higher priority in accordance with § 507 of the Bankruptcy Code, each claimant in this Group shall

7

be paid the full amount of its Claim on the date that is 60 months after the Petition Date.

C.2.3    The Bar Date for asserting any Priority Tax Claim shall be July 2, 2019.    Except as otherwise provided by order of the Bankruptcy Court, any Priority Tax Claim first asserted after July 2, 2019 will not be Allowed and shall not be entitled to payment as an Administrative Claim.

C.2.4    Group 2 consists, without limitation, of Holders of Priority Tax Claims, if and when allowed.  Holders of Priority Tax Claims may include, without limitation,; The Internal Revenue Service ("IRS") in the amount of $74,871.22.  The IRS shall received monthly installments in the estimated amount of $1,362.00.  The allowed claims of this group may be paid in full at any time prior to the fifth anniversary of the Petition Date, but only after payment of all outstanding Professional Fees.  The Allowed Claims of this group shall be paid in full before any distribution is made to any other claimant with an unsecured claim, inthe event that payment on such claims are made in full prior to sixty months following the Petition Date.

8

**D.** **Treatment of Claims and Interests Not Impaired Under the Plan and Those Impaired Under the Plan**

D. 1 **Class One.** Class One shall consist of the Allowed Secured Claim of the Michigan Department of Treasury (hereinafter "Treasury"). Treasury has a claim in amount of $63,797.96, which is secured by a lien in all of Debtor's interest in real and personal property. The property securing this lien has an aggregate value of $21,513.31. As such, the Treasury claim, to the extent allowed, is only partially secured pursuant to 11 U.S.C. § 506.

D.1.1. Debtor shall pay Treasury monthly payments in the amount of $298.79 plus interest of 3.5% on account of their Allowed Secured Claim for a term equal to the number of months beginning with the first month after the Effective Date and the month which is one seventy-two (72) months after the Effective Date.

D.1.2. **This class is impaired.**

D.2 **Class 2.** Class Two shall consist of the Allowed Secured Claim of the City of Detroit (hereinafter "Detroit"). Detroit has a secured claim for unpaid taxes in

9

the amount of $62,218.68.  The Detroit claim is secured by a judgment lien on Debtor's real and personal property, which is valued at $21,513.31. After deducting higher priority claims, the Detroit claim, to the extent allowed, is wholly unsecured pursuant to 11 U.S.C. § 506.  Notwithstanding anything contained in this paragraph, the Debtor reserves all rights to object to the Detroit claim under this Plan, or as provided by the Bankruptcy Code.

D.2.1.  Debtor shall pay Detroit monthly payments in the amount of $0.00 on account of their Allowed Secured Claim.

D.2.2.  **This class is impaired.**


D.3. **<u>Class Three</u>**.  Class Three consists of the claims of all unsecured creditors, if and when Allowed.  Debtor estimates that the unsecured claims in Class Three total $172,503.33.  Notwithstanding anything contained in this paragraph, the Debtor reserves all rights to object to the claims of unsecured creditors under this Plan, or as provided by the Bankruptcy Code.

D.3.1.  Each holder of an allowed claim in this class shall receive a 100% distribution on account of its allowed claim, exclusive of any post-petition interest, from the proceeds paid in by the Debtor to fund the Plan.  The allowed claims in this Class shall receive seventy two (72) monthly pro-rata payments in the

10

aggregate estimated amount of $2,395.88. Such distribution shall be paid contemporaneously with all claims in any senior class or group in an amount sufficient to pay 100% of every claim in this class within 72 months from the Effective Date.

D.3.2. **This Class is impaired.**

D.4. **Class Four**. Class Four consists of the claims of the equity interest holders, if and when Allowed. Larry Teamer is the sole interest holder of Debtor and holds a claim in the amount of $153,374.00. Debtor shall pay $7,000 to the Debtor in exchange for 100% of the outstanding shares of the reorganized debtor on the Effective Date.

D.4.1. Each holder of an allowed claim in this class shall receive a 100% distribution on account of its allowed claim, exclusive of any post-petition interest, from the proceeds paid in by the Debtor to fund the Plan. Such distribution shall be paid after payment in full of all claims in any senior class or group. The holders of allowed claims shall be paid a lump sum distribution on account of their claims on or before 72 months after the Effective Date.

D.3.2. **This Class is impaired.**

### E.     Execution and Implementation of the Plan

Debtor will continue to operate its commercial security business and will fund the Chapter 11 plan from the cashflow of the business.

### F.     Executory Contracts

The Debtor assumes all executory contracts with the exception of the lease with BMW Financial, which has filed a claim based on rejection of the Debtor's automobile lease (Claim #2).

### G.     Discharge of Debtor and Retention of Liens

G. 1 Except as provided in this Plan, the occurrence of the Effective Date of this Plan shall, and does hereby, act to discharge and release the Claims of all Creditors of all Interests against the Debtor and the Reorganized Debtor and shall be deemed to constitute a full and complete settlement with such Creditors and/or Interest Holders.

G.2 Confirmation of this Plan shall not disturb the perfected liens of any class of secured creditors. With respect to any Creditor holding a Secured Claim, such Creditor shall retain its lien(s) securing such Claim until such time that its Secured Claim is satisfied. Upon Confirmation, the purported liens held by any Creditor that is wholly unsecured pursuant to 11 U.S.C. § 506 shall be discharged and released.

### H.     Retention of Jurisdiction

H. 1 The Court shall retain jurisdiction for the following purposes:

(a) to determine any and all objections to the allowance and/or priority of Claims to the extent permitted by law;

(b) to determine any and all disputes arising under this Plan;

(c) to determine any and all applications for allowance of compensation or reimbursement of expenses as provided for herein for professional services and expenses;

(d) to determine any and all pending applications for rejection of executory contracts and unexpired leases and the allowance of any Rejection Claims pursuant to the Plan;

(e) to determine any and all applications, adversary proceedings and contested and litigated matters pending at Confirmation;

(f) to determine any and all applications for approval of settlement agreements and to grant and enforce appropriate orders in connection therewith as provided in this Plan;

(g) to enforce and administer the provisions of the Plan;

(h) to modify any provisions of the Plan to the full extent permitted by the Code;

13

(I) to correct any defect, cure any omission or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(j) to enforce all orders, judgments, injunctions and rulings entered in connection with the Case; to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan;

(k) to adjudicate all claims or controversies arising out of any purchase or contract made or undertaken by the Debtor during the pendency of the cases;

(l) to hear and determine matters concerning state, local and federal taxes pursuant to §§346, 505, 525 and 1146 of the Code;

(m) to hear and determine any action or proceeding brought by the Debtor under §§329, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date;

(n) to determine the validity, extent and priority of all Claims and liens against property of the Debtor.

H. 2 <u>On and after the Confirmation Date</u>, all Creditors and persons acting in concert with them are enjoined and restrained, pursuant to §105 of the Code, directly or indirectly, from levying, seizing, executing or otherwise exercising control over or interfering with any asset of the Debtor in a manner inconsistent with the terms of this Plan, for the purpose of paying or enforcing any claim against Debtor. This Court retains jurisdiction to enter such supplemental injunctive and enforcement orders as may be necessary or appropriate to protect assets of the Debtor from treatment in a manner inconsistent with this Plan.

H. 3 <u>If the Court abstains from exercising or declines to exercise jurisdiction</u> or it is otherwise without jurisdiction over any matter arising in, arising under, or related to the Case, including the matters set forth herein, or if the Debtor elects to bring an action in any other forum, this Article shall have no effect upon and shall not control, prohibit or limit the exercise or jurisdiction by any other court having jurisdiction with respect to such matter.

## I.     <u>Contested Claims and Contested Equity Interests and Retained-Claims</u>

I. 1 <u>Objections to Claims to be Filed after Effective Date</u>: Within 30 days after the Effective Date, objections to Claims and Interests and any suit to subordinate any such

Claim or Interest may be filed only by the Debtor. Such objections and suits shall be served upon each holder of each of the Claims and Interests to which objections are to be made, as soon as practicable after filing with the Court.

I. 2 <u>Payment upon Resolution of Contested Claims</u>: Except as may otherwise be agreed with respect to any contested Claims, no payments or distributions shall be made with respect to all or any portion of a contested Claim unless and until all objections to such contested Claim have been determined by a Final Order. Payments and distributions to each holder of a contested Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan with respect to the class of creditors to which the holder of such an Allowed Claim shall be made as soon as practicable after the date that the order or judgment of the Court allowing such claim is a Final Order.

I. 3 <u>Prosecution of Pending Objections to Claims</u>: Objections to Claims and Interests, if any, that are pending at Confirmation, shall be prosecuted only by the Debtor after Confirmation. Debtor shall have the sole discretion to litigate to judgment, settle or withdraw objections to contested Claims and contested Interests.

I. 4 <u>Released and Retained Claims and Causes of Action</u>:

If this Plan of Reorganization is accepted by all impaired Classes of Creditors, the Debtor retains their right to initiate all causes of action under §§547 through 553 of the

Bankruptcy Code and may bring any action to avoid a lien for any reason. Debtor will seek confirmation on a cramdown basis under §1129(b) if necessary.

**J.**     **Amendments**

J. 1 <u>Modifications and Amendments</u>: The Debtor reserves the right to propose amendments or modifications to the Plan at any time prior to the Confirmation Date in accordance with §1127 of the Code, with such notice as the Court may direct and to modify the treatment of any Allowed Claim or Allowed Interest at any time after the Confirmation Date, upon the consent of the Creditor or Interest holder whose Allowed Claims or Allowed Interests treatment is being modified. After the Confirmation Date, the Debtor may, with Court approval, in a manner which does not materially or adversely affect the rights of Creditors and other parties in interest, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such matter as it deems necessary to carry out the purposes and intent of the Plan.

**K.**     **Miscellaneous Provisions**

K. 1 <u>Authorization by Claimants</u>: Each and every Claimant who elects to participate in the distributions provided for herein warrants that the Claimant is authorized to accept, in consideration of its Claim against Debtor, the distributions provided for in this Plan, and that there are no outstanding commitments, agreements or

understandings, expressed or implied, that may or can in anyway defeat or modify the rights conveyed, or obligations undertaken by such Claimant under this Plan.

K. 2 <u>Entire Agreement</u>: This Plan and the Confirmation Order, and annexes and exhibits thereto and agreements referenced herein to be executed in connection herewith, sets forth the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

K. 3 <u>Payments or Distribution Dates</u>: Whenever any payments or distributions to be made under this Plan shall be due on a day other than a business day, such payment or distribution shall, instead, be made without interest on the next business day thereafter.

K. 4 <u>Title of Assets</u>: Except as otherwise provided in the Plan, on the Confirmation Date, title to all assets and properties of the estate of the Debtor shall vest in the Debtor in accordance with §1141 of the Bankruptcy Code, free and clear of all Claims of Creditors and holders of Interests.

K. 5 <u>Pre-payment</u>: Notwithstanding anything in this Plan to the contrary, the Debtor shall be allowed without any penalty to make an earlier payment to any Creditor for any Allowed Claim prior to the time that such payment shall be due.

K. 6 <u>Contested Claims</u>: Notwithstanding anything in this Plan to the contrary, the

Debtor shall not be obligated to make any payments for any Allowed Claims to any Creditor who holds a Contested Claim. Further, the Debtor shall not be required to make any payments for an Allowed Claim to any Creditor if the Debtor have filed a motion, objections, adversary proceeding or other similar notice against such Creditor alleging an objection, claim, cause of action, offset or counter-claim, such that if sustained and not paid by such Creditor would result in a disallowance of such Allowed Claim in accordance with §502(d) of the Code.

K. 7 <u>Post Confirmation Professional Fees</u>: As of the Confirmation Date, any services performed by any professional on behalf of the Debtor with respect to this case after the Confirmation Date, shall not be subject to the prior review and approval of the Bankruptcy Court. All such fees shall be billed directly to the Debtor and the Bankruptcy Court shall only review that portion of the billed services to which the Debtor objects. The portion not objected to shall be paid in accordance with the terms of the invoice.

K. 8 <u>Execution of Documents Necessary for Confirmation</u>: The Debtor and all parties in interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize the terms and conditions of this Plan. This shall include without limitation any execution by the Debtor of UCC financing statements and the execution by Creditors of any termination of same.

K. 9 <u>Binding Nature of Plan</u>: This Plan and the Confirmation Order shall inure to

the benefit of, and be binding upon, all parties in interest and their respective successors and assigns.

## II. Description of Debtor

A. <u>Debtor.</u>  Debtor Pyratech Security Systems, Inc. is a Michigan corporation.  The Debtor has operated as a commercial armed security service for companies throughout Metro Detroit for more than 30 years.  In addition to armed security services, the Debtor also provides commercial alarm installation and monitoring for several customers.

B. <u>Description of Principals.</u>  Larry Teamer is the sole shareholder of Debtor.  Mr. Teamer has operated the Debtor continuously since he founded the company more than 30 years ago.  The annual compensation of Mr. Teamer is $60,000. The only additional benefit he receives is a company-paid automobile.  Mr. Teamer owns the real estate in which the Debtor operates.  The Debtor has not paid rent in nearly three years.

C. <u>Business Industry and Causes for Chapter 11 Filing.</u>  In 2014, the Debtor lost a substantial security contract with the City of Detroit followed by a second loss of a substantial contract with Detroit Public Schools in 2015.   The combined losses represented more than 60% of the Debtor's business.  In addition, the

debtor held an outstanding account receivable in excess of $200,000 from the Detroit Public Schools for nearly two years while the school system was in receivership. During this time the Debtor fell behind on tax payments and struggled to meet all payroll obligations as they came due. The Debtor was eventually sued by the City of Detroit for outstanding taxes and in 2018 was facing a levy of his accounts from the IRS and Treasury. The threat of the levy prompted the filing of this Chapter 11 case. The debt in this case consists almost exclusively of priority and secured tax debt that the Debtor is treating through the plan.

III.    **Post-Petition Events of Significance**

A.    Post-Petition transfers

None.

B.    Cash Collateral Post-Petition financing and adequate protection

None.

C.    Litigation Pending/Contemplated.

None.

IV.    **Liquidation Analysis**

A.    *See Exhibit A – Liquidation Analysis*

B.      Risks, Conditions, and Assumptions Re: Valuation: The valuation of the Debtor's assets for the liquidation analysis is based on the Debtor's best estimation of value combined with publicly available information from several real estate valuation reference sites that Debtor provided contemporaneous with this Chapter 11 Bankruptcy The "forced sale" value of the real estate has been used for the purposes of the liquidation analysis which is 95 percent of the opinion value of the real estate. Personal property is valued using Debtor's best estimation of the liquidation value of items owned by the Debtor. After estimated administrative expenses, a liquidation of Debtor's assets would allow a 100% dividend to unsecured creditors, which Debtor proposes to pay through this Chapter 11 plan. In the event of liquidation, it is unknown how long it would take to liquidate the Debtor's real and personal property interests.

C.      The Debtor does not have any claims or causes of actions it plans to pursue. There are no claims or avoidance actions being considered at this time.

D.      Larry Teamer is jointly and severally liable for any liability attributable to fiduciaries from the taxing authorities. This would consist solely of the obligation to the IRS in the total amount of $152,929.19. All of the Debtor's assets (real and personal property) serve as collateral for the IRS, Treasury and Detroit tax obligations.

V.      **Plan Implementation**

22

A.      Financial Information

      1.      <u>Pre-Petition (2015, 2016, 2017)</u>:

               *See Exhibit B*

      2.      <u>Post-Petition (November 2018 through March 2018)</u>:   *See Exhibit C*

      3.      <u>Post-Confirmation Projections:</u>   *See Exhibit C*

B.      Tax Ramifications:  The Debtor does not believe that the forgiveness of indebtedness that may result from a discharge will result in significant tax consequences for the Debtor.  Forgiveness of indebtedness under the Internal Revenue Code may be applied to the net operating loss carry forward or to the Debtor's asset basis.  Before any such determination can be made, all Claims deemed filed in the Chapter 11 case must be reviewed for accuracy. Furthermore, if the Debtor's projections are met or exceeded in the current fiscal year, the Debtor may choose to apply forgiveness of debt directly to its basis.  It is unlikely that the amount of forgiveness of debt will be wholly offset by either application. As such, future taxes may be impacted as a result of confirmation of the plan.

Upon completion of the plan, the Debtor does expect that there will be a significant taxable event created by the lump sum distribution proposed in the Chapter 11 plan.


**VI.    <u>Legal Requirements</u>**

     *A. Voting procedures*

Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interests that are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are <u>not</u> entitled to vote on the plan.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the plan will be counted only with respect to claims: (1) that are listed on the Debtors Schedules of Assets and Liabilities <u>other</u> than as disputed, contingent or unliquidated; or (2) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order).

However, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. 502 and Bankruptcy Rule 3018.

24

18-55926-mlo    Doc 26    Filed 03/27/19    Entered 03/27/19 20:44:53    Page 24 of 27

Voting on the plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the plan and disclosure statement, each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the plan, and then return the ballot by mail to the Debtors' attorney by the deadline previously established by the Court.

Any ballot that does not appropriately indicate acceptance or rejection of the plan will not be counted.

A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the Debtors' attorney.

### B. Acceptance

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.

### C. Confirmation

25

11 U.S.C. § 1129(a) establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a plan under 11 U.S.C. § 1129(a) are these:

1.     Each class of impaired creditors and interests must accept the plan, as described in paragraph VI.B., above.

2.     <u>Either</u> each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

### D. Modification

The Debtor reserves the right to modify or withdraw the plan at any time before confirmation.

### E.     Effect of confirmation

If the plan is confirmed by the Court:

1.     Its terms are binding on the Debtors, all creditors, shareholders and other parties in interest, regardless of whether they have accepted the plan.

2.     Except as provided in the Plan

26

(a) In the case of a corporation that is <u>reorganizing and continuing business:</u>

(1) All claims and interests will be discharged;

(2) Creditors and shareholders will be prohibited from asserting

their claims against or interest in the Debtor or its assets.

Dated: March 26, 2019

/s/ Larry Teamer
Larry Teamer, President
Pyratech Security Systems, Inc., Debtor

/s/Ethan D. Dunn
Ethan D. Dunn (P69665)
MAXWELL DUNN, PLC
Attorneys for Debtor
24725 W. 12 Mile, Suite 306
Southfield, MI 48034
(248) 246-1166
edunn@maxwelldunnlaw.com